IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

    Plaintiff,

vs.                                                              1:21-cr-00797-KWR

ALPHONSO DINUWELLE,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Motion to Suppress Statements and Evidence (**Doc. 34**). The Court held an evidentiary hearing on June 7, 2022. Having reviewed the pleadings and heard oral argument and testimony at the hearing, the Court finds that Defendant's motion is not well taken, and therefore, is **DENIED**.

### BACKGROUND[1]

In August 2020, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") began investigating Defendant Alphonso Dinuwelle as a suspected drug and firearm dealer after agents received a tip from a confidential source. On August 26, 2020, ATF agents allege that Defendant sold a firearm and 3.3 grams of heroin to a confidential informant during a controlled buy at Defendant's apartment. Later that same day, the confidential informant returned to Defendant's apartment with two undercover ATF agents who recorded the transaction and allege that Defendant sold them a firearm and a small, unknown quantity of heroin for $2,000.

---

[1] The Court is not making factual findings related to Defendant's conduct on the underlying charge in this Memorandum Opinion and Order.

Two days later, on August 28, 2020, the undercover ATF agents returned alone to Defendant's apartment. The ATF agents allege that they purchased a firearm and a quarter ounce of methamphetamine for $3,000. Then, on January 26, 2021, ATF Special Agent Samuel Supnick, one of the undercover agents who participated in the August 28 controlled buy, contacted Defendant by phone and recorded the conversation. Defendant and Agent Supnick discussed the purchase or exchange of a generator, firearms, and drugs. After this conversation, ATF Special Agent Katie Stamper surveilled Defendant and determined that he resided at the same apartment.

On February 11, 2021, Agent Stamper applied for and obtained a warrant for the search and seizure of weapons and narcotics at Defendant's apartment.[2] In the warrant affidavit, Agent Stamper set forth the facts and circumstances regarding her training and experience, the August 28, 2020 controlled buy, and the January 26, 2021 phone call to establish probable cause. On February 12, 2021, ATF agents executed the warrant at Defendant's apartment. ATF agents discovered multiple firearms and a quantity of narcotics.

Defendant Dinuwelle faces several charges, including felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924; using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and distribution of controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Defendant now seeks suppression of all evidence recovered from his apartment, arguing that the search warrant lacked probable cause because it was based on stale information, and that the warrant lacked particularity because it did not properly describe the place to be searched.[3]

---

[2] Agent Stamper also obtained a warrant on February 9, 2021, **Doc. 34-4, Ex. D**, but this warrant was not served.

[3] Defendant requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). *See* **Doc. 40, at 1–3**. In an oral ruling, the Court concluded that Defendant failed to make a substantial preliminary showing that a material statement was knowingly, or with reckless disregard for the truth, omitted from the warrant affidavit, or that such omission would vitiate a finding of probable cause. Thus, the Court denied Defendant's motion for a *Franks* hearing.

## DISCUSSION

I. **The Search Warrant Affidavit was Sufficient to Support a Finding of Probable Cause.**

Defendant first argues that the warrant was based on stale information and therefore lacked probable cause because there was a five-month period between the last controlled purchase of contraband and when the search warrant was issued. *See* **Doc. 34, at 3**.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A totality of the circumstances analysis is used to determine whether a search warrant is supported by probable cause. *See United States v. Tisdale*, 248 F.3d 964, 970 (10th Cir. 2001); *Illinois v. Gates*, 462 U.S. 213, 235 (1983) ("[O]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.").

When reviewing a decision to issue a search warrant, the reviewing court "give[s] great deference to the decision of the issuing magistrate or judge." *See United States v. Sims*, 428 F.3d 945, 954 (10th Cir. 2005) (internal quotations omitted). This Court "need only ask whether, under the totality of the circumstances presented in the affidavit, the magistrate judge had a substantial basis for determining that probable cause existed." *United States v. Artez*, 389 F.3d 1106, 1111 (10th Cir. 2004) (internal quotations omitted). Probable cause to issue a search warrant "exists only when the supporting affidavit sets forth facts that would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001); *Tisdale*, 248 F.3d at 969.

However, probable cause to search cannot be based on stale information. *See United States v. Snow*, 919 F.2d 1458, 1459 (10th Cir. 1990). A search warrant remains valid only as long as

the information in the affidavit supporting its issuance "provides probable cause to believe the items sought will still be found in the place to be searched at the time the search is conducted." *United States v. Garcia*, 707 F.3d 1190, 1194 (10th Cir. 2013).

"The determination of timeliness, however, does not depend on simply the number of days that have elapsed between the facts relied on and the issuance of the warrant." *Snow*, 919 F.2d at 1460. Rather, "whether the information is too stale to establish probable cause depends on [1] the nature of the criminal activity, [2] the length of the activity, and [3] the nature of the property to be seized." *Id.* (internal quotations omitted); *see also United States v. Myers*, 553 F. Supp. 98, 104–05 (D. Kan. 1982) (looking to the continuity of the criminal activity; the time elapsed between the last events giving rise to probable cause and the issuance of the warrant; the use of present or past tense in the affidavit; and the likelihood that the property sought will have been moved). "When the circumstances suggest ongoing criminal activity, the passage of time recedes in importance." *United States v. Cantu*, 405 F.3d 1173, 1177 (10th Cir. 2005). Moreover, "otherwise stale information may be refreshed by more recent events." *Id.* at 1178.

Defendant contends that the facts favor a finding of staleness regarding drug-related items because (1) the ATF agents had information that drug sales were not ongoing; (2) the time between the last event giving rise to probable cause, the controlled buy, and the issuance of the warrants was five months; (3) the probable cause portion of the affidavit refers to events in the past tense; and (4) there was a high likelihood that any guns or drugs would have been moved. *See* **Doc. 40, at 4**.[4] The United States argues otherwise. *See* **Doc. 38, at 6–7**.

---

[4] Defendant also argued that the warrant was overbroad, but appears to have treated issues of overbreadth as a continuation of his staleness argument. *E.g.*, **Doc. 40, at 3** ("[T]his Court must conclude that probable cause to search for narcotics was stale at the time of the warrant application. Thus, the warrant was overbroad."). The Court likewise treats this argument as one of staleness.

4

Here, though a span of five months existed between the August 28, 2020 controlled buy and the issuance of the warrant, this buy was not the last event giving rise to probable cause. In this case, the affiant affirmed that during a phone call on January 26, 2021, Defendant and Agent Supnick, one of the agents who purchased narcotics and weapons from Defendant during the August 28 controlled buy, "agreed to trade a generator for drugs and firearms" at Defendant's apartment. *See* **Doc. 34-5, Ex. E, at 7**. The Court finds that this telephone call with Defendant Dinuwelle was sufficient to demonstrate renewed sales of weapons and drug activity, and thus refreshed the information from the earlier controlled buy. *See Cantu*, 405 F.3d at 1178 (assuming defendant's prior arrests and conviction had grown stale for purposes of demonstrating probable cause, more recent events refreshed those particular episodes); *United States v. Hoang*, 487 F. App'x 239, 244 (6th Cir. 2012) (finding that a discarded website printout about how to grow marijuana and utility records showing elevated electrical use obtained one month before the warrant's issuance refreshed any potential staleness in an anonymous tip that defendants were growing marijuana in their home). In other words, while the referenced controlled buy may be stale if viewed in isolation, the January 2021 phone call sufficiently refreshed any potential staleness and supports the conclusion that evidence of drug and gun related crimes were likely to be found in Defendant's apartment.

Defendant, however, maintains he told the undercover agent that *he* was the one looking for drugs, therefore, the phone call cannot establish an "ongoing and continuing criminal activity or establish a continuity or pattern" of narcotics trafficking. *See* **Doc. 34, at 4–5**. Defendant's argument is unpersuasive.

The affidavit includes Agent Stamper's opinion, based on her professional experience, that individuals involved in the "possession and distribution" of narcotics are likely to possess "drugs,

packaging material, scales, records pertaining to drug transactions, and proceeds from drug sales," and often possess "tools of the trade," including "rifles, shotguns, and handguns." *See* **Doc. 34-5, Ex. E, at 3**. The magistrate judge could have reasonably inferred that Defendant's discussion of drugs, even if he was only looking to purchase drugs as Defendant argues, suggests that Defendant still possessed scales and measuring instruments, packaging, or other "tools of the trade." In sum, the magistrate judge could have reasonably concluded based on the recent phone call where Defendant discussed the sale or exchange of narcotics and weapons, and the earlier controlled buy where Defendant sold narcotics and weapons, there was a fair probability that drugs or drug paraphernalia and guns would be found in Defendant's apartment. Therefore, the Court finds that the magistrate judge had a substantial basis for determining that probable cause existed.

## II.    The Search Warrant Described Defendant's Apartment with Sufficient Particularity.

Defendant also argues that the warrant lacked particularity because the warrant did not properly describe the place to be searched and the location did not "match" Defendant's physical address. *See* **Doc. 34, at 6**.

The Fourth Amendment requires that warrants particularly describe the place to be searched. U.S. Const. amend. IV. "Practical accuracy rather than technical precision controls the determination of whether a search warrant adequately describes the premises to be searched." *United States v. Williamson*, 1 F.3d 1134, 1136 (10th Cir. 1993) (internal quotations and alteration omitted).

Generally, "[a] technically wrong address does not invalidate a warrant if it otherwise describes the premises with sufficient particularity so that the police can ascertain and identify the place to be searched." *United States v. Lora-Solano*, 330 F.3d 1288, 1293 (10th Cir. 2003). Therefore, the test for determining the adequacy of the description of the location to be searched

6

is "[1] whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and [2] whether there is any reasonable probability that another premise[s] might be mistakenly searched." *Id.* (internal quotations omitted). The requisite specificity of the description depends on the facts of each case. *Id.* at 1294.

Additionally, "an executing officer's knowledge may be a curing factor" in a search warrant's deficient description of the premises to be searched. *See Williamson*, 1 F.3d at 1136. However, the officer's knowledge cannot be the sole source of information identifying the physical location of the premises. *Id.*

Defendant argues that the warrant provided: (1) the wrong apartment number, (2) the wrong street address, (3) the wrong zip code indicating "an entirely different part of town," and (4) a physical description that could have applied equally to four other units where Defendant lived. *See* **Doc. 34, at 8**. Thus, Defendant argues there was an "unreasonably high probability that officers would search another apartment," *id.*, and that the executing officers' knowledge of Defendant's residence, alone, is insufficient. *See* **Doc. 40, at 6**. The Government contends that although the address was "technically wrong," the location description was sufficiently particular, the executing officers knew how to arrive at Defendant's apartment, and the apartment letter was incorrect because its signage was obscured by a gate. *See* **Doc. 38, at 11**.

In this case, ATF agents sought a search warrant for "308 Dunes Place SE, Apt. C, Albuquerque, NM 87107." *See* **Doc. 34-5, Ex. E, at 1**. Defendant's actual residence, however, is 308 Dunes Place SE, **Apt. A**, Albuquerque, NM **87123**. *See* **Doc. 34, at 6**. Thus, the warrant incorrectly identified Defendant's apartment letter and zip code.

Yet, the Court must conclude that notwithstanding these deficiencies, the warrant is valid. The warrant described the place to be searched as follows:

> The residence is located at 308 Dunes Place SE Apt C, Albuquerque, NM (SUBJECT PREMISES). The SUBJECT PREMISES is a two story apartment building located in southeast Albuquerque. The SUBJECT PREMISES is part of a four (4) unit apartment structure, with the SUBJECT PREMISES being on the first story, furthest to the left. The front entrance of the SUBJECT PREMISES faces west. The SUBJECT PREMISES is located north of the Western Skies DR/Dunes RD intersection. The SUBJECT PREMISES is light brown in color with a flat roof.

**Doc. 34-5, Ex. E, at 8**.

Here, some of the officers executing the search warrant were familiar with Defendant's residence. Agent Stamper testified that the undercover agents who participated in earlier controlled buys were a part of the warrant execution team, and Agent Stamper also conducted physical surveillance and viewed aerial maps of Defendant's apartment to identify its location.

Still, the officers' personal knowledge was not the sole source of information regarding Defendant's residence, and any executing officer would have been able to locate the premises with reasonable effort. First, though the 87107 zip code directs to a different part of Albuquerque, the description accurately provides that Defendant's apartment is "located in southeast Albuquerque." Second, the warrant provided the correct street, Dunes Place SE, and the correct apartment building, 308. Agent Stamper testified that there was only one 308 building on Defendant's street, located north of the intersection of Western Skies Drive and Dunes Road. Third, the warrant also correctly described Defendant's apartment building structure; it was in fact a part of four units, light brown in color, and with a flat roof. From there, the physical description also correctly explains that Defendant's apartment, apartment A, is "on the first story, furthest to the left," with the front entrance facing west.

Consequently, the detailed, accurate description combined with the executing officers' personal knowledge of Defendant's apartment location was sufficient to remedy the deficient apartment letter and zip code in the warrant, and there was little probability that another apartment might be mistakenly searched.

### III. The Good Faith Exception Would Preclude Suppression of the Evidence.

The Government contends that even if the warrant lacked probable cause for the search of narcotics, the good faith exception should apply to prevent suppression. Defendant argues that the good faith exception cannot apply because the warrant omitted a material fact, and because the warrant was overbroad in authorizing the search for narcotics and lacked particularity such that "[n]o executing officer could reasonably assume a search warrant for the wrong residence was valid." *See* **Doc. 40, at 7**.

"[E]ven if a warrant is not supported by probable cause, evidence seized in good-faith reliance on that warrant is not subject to suppression." *See United States v. Knox*, 883 F.3d 1262, 1270 (10th Cir. 2018); *United States v. Leon*, 468 U.S. 897, 922 (1984). However, there are four situations where a search conducted pursuant to an invalid warrant is not afforded the benefit of the good faith exception: (1) if the judge issuing the warrant "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) where the issuing judge "wholly abandoned his judicial role"; (3) where the underlying affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where the warrant was "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *See Leon*, 468 U.S. at 923.

There is no need to determine whether this exception applies because the Court has found that probable cause existed for the search warrant. Nevertheless, even if the warrant lacked probable cause, the good faith exception would apply because, contrary to Defendant's assertions, there is no indication that Agent Stamper exhibited a reckless disregard of the truth, nor is the underlying affidavit so lacking in probable cause or so void of particularity as to render belief in

it entirely unreasonable. Therefore, even if the warrant lacked probable cause, the good faith exception would preclude suppression of the evidence obtained in this case.

## CONCLUSION

The Court finds that the magistrate judge had a substantial basis for concluding that probable cause existed to search Defendant's residence for narcotics and weapons, and that the search warrant described the place to be searched with sufficient particularity. Further, even if the warrant lacked probable cause, the good faith exception would apply. Having so determined, the Court need not discuss the parties' remaining arguments.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress (**Doc. 34**) is **DENIED**.

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE